IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AQUIL SYDER,  Plaintiff, | : : : | |
| v. | : : | CIVIL ACTION NO. 22-CV-3856 |
| PHILADELPHIA INDUSTRIAL CORRECTIONAL CENTER, *et al.*,  Defendants. | : : : | |

### MEMORANDUM

**MARSTON, J.**                                                                                                                  December 20, 2022

Plaintiff Aquil Syder, a prisoner currently confined at SCI Dallas, filed this action alleging violations of his civil rights based on events that occurred while he was a pretrial detainee housed at the Philadelphia Industrial Correctional Center ("PICC"). Syder also seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Syder leave to proceed *in forma pauperis*, and dismiss the Complaint in part with prejudice and in part without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B).

**I.      FACTUAL ALLEGATIONS**[1]

The events alleged in the Complaint occurred between January 2021 and February 2021, while Syder was a pretrial detainee housed at PICC. (Doc. No. 2 at 2–7.) Named as Defendants are: (1) PICC; (2) the Philadelphia Prison System; (2) Philadelphia Prison Commissioner Blanche Carney; and (3) unknown Prison System staff including the Warden, the Deputy

---

[1] The allegations set forth in this Memorandum are taken from Syder's Complaint. The Court adopts the pagination supplied by the CM/ECF docketing system. The Court notes that Syder's last name was spelled incorrectly on the docket. The Clerk of Court will be directed to correct the spelling.

Warden and Superintendent.² (*Id.* at 2–4.) Each individual Defendant is named in his or her official capacity. (*Id.*)

Syder alleges that while at PICC he was denied cleaning supplies necessary to "clean cells and hard surfaces properly." (*Id.* at 5, 7). He claims that his cell was previously occupied by a prisoner with "visible" Methicillin-resistant Staphylococcus aureus ("MRSA") on his hand, and that the cell was not properly cleaned before Syder moved into it. (*Id.* at 7.) As a result, Syder claims to have contracted MRSA under his "arms and groin." (*Id.* at 6–7.) Syder also contends that "[t]here were days in which [he] wasn't called to medical" to treat his MRSA infection (*id.* at 5), and that his "sick call/woundcare" requests were ignored (*id.* at 5, 9). He claims that he filed grievances related to the lack of cleaning supplies as well as the failure to follow-up on his sick-call requests but that his grievances went unanswered. (*Id.* at 8–10.)

According to Syder, the inability to properly clean his cell led to his MRSA infection, which resulted in weight loss and a "tennis ball size infection on [his] groin," and left him unable to walk for a two-week period. (*Id.* at 7.) He also alleges that delayed medical treatment of his MRSA caused further physical harm leading to the need for "surgery to remove re-occur[ing] symptoms and infections in the future." (*Id.* at 3, 7.) As a result of the conditions of his confinement and delay in medical care, Syder seeks $12.5 million in damages.

---

² The Court notes that Syder identified as defendants the unknown Deputy Warden and Superintendent. (Doc. No. 2 at 4.) The Clerk of Court will be directed to correct the docket to add as named Defendants "Unknown Deputy Warden" and "Unknown Superintendent." However, because the City of Philadelphia Prison System does not have a Superintendent, the "Unknown Superintendent" will be dismissed with prejudice. *See* Philadelphia Home Rule Charter, 351 Pa. Code §§ 3-100, 3-101 (Prison Commissioner is head of the City of Philadelphia Department of Prisons).

## II.      STANDARD OF REVIEW

The Court grants Syder leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.³ Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) ("At this early stage of the litigation, [the Court will] accept the facts alleged in [the *pro se*] complaint as true, draw[] all reasonable inferences in [the plaintiff's] favor, and ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim." (internal quotations omitted)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.

As Syder is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).  "This means we remain flexible, especially 'when dealing with imprisoned *pro se* litigants[.]'" *Id.* (quoting *Mala*, 704 F.3d at 244).  The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.*  However, "'*pro se* litigants still must allege sufficient facts in their complaints to support a claim.'" *Id.* (quoting *Mala*, 704 F.3d at 245).

---

³ Because Syder is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act.  *See* 28 U.S.C. § 1915(b).

3

### III. DISCUSSION

Syder alleges violations of his civil rights pursuant to 42 U.S.C. § 1983, the vehicle by which federal constitutional claims may be brought in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "A defendant in a civil rights action must have personal involvement in the alleged wrongs." *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).

#### A. Claims Against PICC and the Philadelphia Prison System

Syder names PICC and the Philadelphia Prison System as Defendants. (Doc. No. 2 at 2–3.) PICC is not a "person" subject to liability under § 1983. *See Ortiz v. P.I.C.C.*, No. 21-3813, 2022 WL 1567794, at *3 (E.D. Pa. May 18, 2022) ("The § 1983 claim against PICC is dismissed because a prison is not a 'person' under § 1983, and not subject to liability under that statute."). Similarly, "the Philadelphia Prison System, [a] department[ ] of the City of Philadelphia itself, [is] not [a] proper defendant[ ]" in an action brought under § 1983. *See William-Whitfield v. Commonwealth PPS Sys.*, No. 21-4513, 2022 WL 44008, at *1 (E.D. Pa. Jan. 5, 2022); *see also Russell v. City of Philadelphia*, 428 F. App'x 174, 177 (3d Cir. 2011); *Durham v. Phila. Prison Sys.*, No. 18-2113, 2018 WL 3105589, at *2 (E.D. Pa. June 25, 2018) ("The Philadelphia Prison System is not an entity that is subject to suit separate from the City of Philadelphia. It is also not considered a 'person' for purposes of § 1983 (citations omitted)). Accordingly, the Court will dismiss any claims against these Defendants with prejudice.

4

## B. Claims Against Commissioner Carney and Unnamed Prison Officials

### 1. Official Capacity Claims

Syder seeks to bring claims against the individual Defendants in their official capacities. (*See* Doc. No. 2 at 2–4.) Claims against City of Philadelphia officials named in their official capacity are indistinguishable from claims against the City. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690, n.55 (1978))). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 166.

To plead a basis for municipal liability under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights. *See Monell*, 436 U.S. at 694. "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). "Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (cleaned up). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). For a custom to be the proximate cause of an injury, the plaintiff must show that the defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [the plaintiff's] injury." *Id.* (cleaned up).

To the extent Syder seeks damages from the named Defendants in their official capacities, he has failed to allege facts that support *Monell* liability. Syder has not alleged a municipal policy or custom, or that such a policy or custom caused a constitutional violation. Accordingly, Syder's *Monell*/official capacity claims are not plausible and must be dismissed. However, because the Court cannot say at this time that Syder can never state a plausible *Monell*/official capacity claim, the dismissal will be without prejudice and Syder will be permitted the opportunity to file an amended complaint if he can cure the defect the Court has identified.

2. **Individual Capacity Claims**

Syder appears not to have understood the implication of checking solely the official capacity boxes on the form complaint he used to prepare his pleading. As Syder is proceeding as a *pro se* litigant, and further, since the Complaint seeks monetary damages for Defendants' actions, the Court will liberally construe the Complaint as also asserting claims against the Defendants in their individual capacities. *See Coward v. City of Philadelphia*, No. 21-1619, 2021 WL 4169422, at *3 (E.D. Pa. Sept. 13, 2021) (permitting claim against defendant in his individual capacity to proceed even though "[plaintiff] did not check the box indicating a desire to sue [that defendant] in his individual capacity" where the allegations clearly sought relief based on the defendant's conduct).

Syder names Blanche Carney as a Defendant and identifies her as the Prison Commissioner for the Philadelphia Prison System (Doc. No. 2 at 3), but presents no allegations against her in the body of the Complaint. In other words, Syder has not alleged what Defendant Carney did, or did not do, to violate his constitutional rights. Nor has Syder provided sufficient factual allegations in the body of the Complaint as to the action or inaction of the unnamed

Warden, Deputy Warden or Superintendent.  While Syder generally claims that the "warden and staff were told we have no cleaning supplies" and that "staff" knew about his sick-call slips (Doc. No. 2 at 5), he does not provide the necessary "who, what, where, when, and why" to "nudge" his claims from the possible to the plausible.[4]  *See generally Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  (cleaned up)); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.").  Because Syder has not alleged sufficient facts to proceed at this time against Carney or other prison staff including the Warden, Deputy Warden or Superintendent, his claims against these

---

[4]  To the extent that Syder's claims are based on an alleged failure to respond adequately to grievances he filed, the claims are also not plausible.  Claims based on the handling of prison grievances fail because "[p]rison inmates do not have a constitutionally protected right to a grievance process."  *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) ("The District Court correctly noted that an inmate has no constitutional right to a grievance procedure.  Thus, we agree that the DOC's act of denying Caldwell's grievance did not infringe upon his constitutional right to petition the government for redress."); *Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) ("[B]ecause a prisoner has no free-standing constitutional right to an effective grievance process, [the plaintiff] cannot maintain a constitutional claim . . . based upon his perception that [the defendant] ignored and/or failed to properly investigate his grievances." (cleaned up)).  A prison official's involvement in the grievance process, alone, is thus not actionable under § 1983; rather, the plaintiff must allege the prison official had personal involvement in the alleged wrongs.  *See Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) ("Although some of these defendants were apparently involved in responding to some of Folk's prison grievances, there are no allegations linking them to the underlying incidents and thus no basis for liability based on those later grievance reviews."); *Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) ("The District Court properly determined that Defendants [Superintendent] Wenerowicz, Lewis, and Shaylor – who participated only in the denial of Curtis' grievances – lacked the requisite personal involvement.").  Accordingly, to the extent Syder bases his claims against Carney and the unnamed officials purely on their handling of his grievances, that is not a plausible basis for a claim against them.  To the extent he raises separate claims involving his grievances, those claims are dismissed with prejudice.

Defendants are not plausible and will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).[5]

### 3. Conditions of Confinement Claim

Syder complains about unsanitary conditions at PICC while he was confined as a pretrial detainee in early 2021. While he cites to the Eighth Amendment as the basis of his claim, the Due Process Clause of the Fourteenth Amendment governs claims brought by pretrial detainees, like Syder, while the Eighth Amendment governs similar challenges raised by convicted inmates. *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005); *see also Bell v. Wolfish*, 441 U.S. 520, 535 (1979).

To establish a basis for a Fourteenth Amendment violation, a pretrial detainee must allege that his conditions of confinement amount to punishment. *See Camps v. Giorla*, 843 F. App'x 450, 452 (3d Cir. 2021) ("[A] court must determine whether the conditions complained of were imposed for the purpose of punishment or whether it is merely incidental to a legitimate governmental objective."). "[A] 'particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose.'" *Bistrian v. Levi*, 696 F.3d 352, 373 (3d Cir. 2012) (quoting *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007)); *see also Steele v. Cicchi*, 855 F.3d 494, 504 (3d Cir. 2017).

---

[5] Although it is unclear if Syder sought to name these Defendants based solely on their holding supervisory positions, such a claim is not plausible. Syder has not asserted the elements to establish supervisory liability - personal involvement, knowledge of and acquiescence in a subordinate's unconstitutional conduct, or deliberate indifference to a policy, practice, or custom which directly caused constitutional harm. *Barkes v. First Corr. Med. Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 135 S. Ct. 2042 (2015). Without such factual allegations, any supervisory liability claim necessarily fails.

Unconstitutional punishment typically includes both objective and subjective components. *Stevenson*, 495 F.3d at 68. "[T]he objective component requires an inquiry into whether 'the deprivation [was] sufficiently serious' and the subjective component asks whether 'the officials act[ed] with a sufficiently culpable state of mind.'" *Id.* (citations omitted). In general, a prisoner must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) ("In order to show . . . conditions of confinement violation, a plaintiff must show that the defendants knew of and disregarded an excessive risk to his health. The official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference." (cleaned up)).; *cf. Edwards v. Northampton Cty.*, 663 F. App'x 132, 135 (3d Cir. 2016) ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees." (internal citations omitted)).

Syder alleges that his constitutional rights were violated because cleaning supplies were not provided on a regular basis. Assuming that the allegations could be liberally construed to assert a claim of "punishment," Syder has not adequately tied those allegations to any of the named individual Defendants. *See Rode*, 845 F.2d at 1207. Nor has Syder alleged that any Defendant acted with deliberate indifference by denying cleaning supplies or the opportunity to clean his cell more thoroughly. Accordingly, Syder's claims based on the conditions of his confinement will be dismissed without prejudice, and he will be permitted the opportunity to amend his pleading if he can cure the noted defects.

### 4. Claim for Deliberate Indifference to Medical Needs

In addition to claiming that unsanitary conditions caused him to contract MRSA, Syder alleges delays in medical treatment for his MRSA infection. (Doc. No. 2 at 3, 5.) He claims that "[t]here were days in which I wasn't called to medical to change wounds from [MRSA] surgery." (*Id.* at 5.) Syder contends that he informed staff of several missed sick-call slips, and that his "health and life [were] put in severe risk due to negl[i]gence and violation of 8th Amendment." (*Id.* at 7.)

To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.[6] *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999); *see also Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (stating

---

[6] As previously noted, Syder was a pretrial detainee at the time of the events in question, and thus, the Fourteenth Amendment governs deliberate indifference to medical needs claim. *See Hubbard*, 399 F.3d at 166; *see also Edwards*, 663 F. App'x at 136 ("Because Edwards is a pretrial detainee, his claim for inadequate medical care is also adjudicated under the Due Process Clause of the Fourteenth Amendment.") In any event, the standard under the Eighth and Fourteenth Amendments for claims related to a prisoner's medical needs is essentially the same for purposes of the Court's analysis. *See Moore v. Luffey*, 767 F. App'x 335, 340 n.2 (3d Cir. 2019) ("Both standards require the plaintiff to show that the defendant was more than negligent in addressing the plaintiff's serious medical needs.").

deliberate indifference can be shown by a prison official "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed" (cleaned up)).

Furthermore, "[a] medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (cleaned up). "[W]here denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious." *Id.* Allegations of medical malpractice and mere disagreement regarding proper medical treatment, however, are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). Additionally, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with . . . deliberate indifference." *Id.* at 236.

Syder's allegations do not state a plausible Fourteenth Amendment claim under the *Iqbal* pleading standard. His allegations concerning deliberate indifference to his medical needs are undeveloped since he only states that he failed to receive medical care after it was requested. Syder has not alleged that any named Defendant knew he needed medical treatment and intentionally refused, delayed, or prevented him from receiving that treatment. *See Rode*, 845 F.2d at 1207 (stating that the personal involvement of a defendant in a § 1983 action may be shown "through allegations of personal direction or of actual knowledge and acquiescence"). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the

Constitution." *Iqbal*, 556 U.S. at 676; *see also Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct." (quoting *Iqbal*, 556 U.S. at 677) (emphasis in original)). Syder has not identified an individual or individuals who intentionally denied or delayed access to medical care, or who intentionally interfered with prescribed treatment.

Syder's allegations as currently pled are insufficient to state a constitutional claim. Thus, Syder's deliberate indifference to medical needs claims will be dismissed without prejudice for failure to state a claim. However, because the Court cannot say at this time that Syder is incapable of curing these defects, he will be given an opportunity to reassert the claims in an attempt to cure the defects.

## IV. CONCLUSION

As set forth more fully above, Syder's § 1983 claims against PICC and the Philadelphia Prison System will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Because the Court cannot say at this time that Syder cannot cure the defects in his claims for (1) official capacity/*Monell* liability; (2) unconstitutional conditions of confinement; and (3) deliberate indifference to serious medical needs, these claims will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Syder will be granted the option of filing an amended complaint to assert a plausible basis for these claims. Any amended complaint must clearly describe the factual basis for Syder's claims against the relevant defendants and how each defendant was personally involved in the alleged denial of his constitutional rights.[7] An appropriate Order follows, which provides further instruction as to amendment.

---

[7] Any amended complaint must provide as much identifying information for the defendants as possible.