IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **AQUIL SYDER,**<br><br>Plaintiff,<br><br>*v.*<br><br>**PHILADELPHIA INDUSTRIAL CORRECTIONAL CENTER et al.,**<br><br>Defendants. | **CIVIL ACTION**<br><br>**NO. 22-3856-KSM** |

**MEMORANDUM**

**MARSTON, J.** **December 13, 2023**

Plaintiff Aquil Syder, a prisoner currently confined at SCI Dallas, filed this action alleging violations of his civil rights based on events that occurred while he was a pretrial detainee housed at the Philadelphia Industrial Correctional Center ("PICC") and Curran-Fromhold Correctional Facility ("CFCF"). In his Amended Complaint, Plaintiff brings claims against the City of Philadelphia ("the City"), Correctional Officers Baker and Gordon,[1] Nurse Joycee[2], Lieutenant Q. Thomas,[3] Lieutenant Cruz, an Unknown Warden, and an Unknown former Commissioner (collectively, "Defendants").[4] (Doc. No. 14.) The City brings the instant

[1] Plaintiff's Amended Complaint also makes reference to grievances against Correctional Officer Diaz (*See, e.g.*, Doc. No. 14 at 14), but Plaintiff fails to name Diaz as a defendant in his Amended Complaint.

[2] Plaintiff spells Defendant Joycee's name differently throughout his Amended Complaint. (Doc. No. 14.) As Defendant Joycee has not been properly served, the Court adopts Plaintiff's initial spelling of Defendant's name when he names her in the Amended Complaint. The Return of Summons Unexecuted for Defendant Joycee notes that she was a contract employee and Plaintiff needs to provide the name of her employer and an address for her to be properly served. (Doc. No. 52.)

[3] After multiple attempts, Plaintiff successfully served Sergeant Quadirah Thomas with the Amended Complaint. (*See* Doc. Nos. 42, 53.)

[4] Plaintiff brings his claims against the individual defendants in their official and individual capacities. (Doc. No. 14.) He fails to provide any other personally identifying information such as first names as to

motion to dismiss the claims brought against the City. (Doc. No. 26.) Plaintiff opposes the motion. (Doc. Nos. 37, 43.) For the reasons that follow, the Court grants the City's motion to dismiss Plaintiff's claims against the City.

## I. Procedural History

Plaintiff initially brought his complaint on September 26, 2022, asserting Eighth Amendment claims against PICC, the Philadelphia Prison System, Philadelphia Prison Commissioner Blanche Carney, and unknown Prison System staff including the Warden, Deputy Warden, and Superintendent. (Doc. No. 2.) Plaintiff alleged that while at PICC he was denied cleaning supplies necessary to "clean cells and hard surfaces properly." (*Id.* at 5, 7.) He claimed that his cell was previously occupied by a prisoner with "visible" Methicillin-resistant Staphylococcus aureus ("MRSA"), and that the cell was not properly cleaned before Plaintiff was transferred into the cell. (*Id.* at 7.) As a result, Plaintiff claimed to have contracted MRSA under his "arms and groin." (*Id.* at 6–7.) Plaintiff also claimed his requests for "sick call/woundcare" were ignored, and his grievances relating to the lack of cleaning supplies and failure to follow-up on sick-call requests went unanswered. (*Id.* at 5–10.)

On December 20, 2022, in connection with its screening obligations forgranting Plaintiff *in forma pauperis* status, this Court dismissed Plaintiff's complaint in part with prejudice and in part without prejudice. (Doc. No. 7.) The Court dismissed Plaintiff's claims against the PICC, Philadelphia Prison System, and Unknown Warden with prejudice (*id.* at 2–4) and dismissed Plaintiff's remaining claims against Commissioner Carney and the unnamed prison officials without prejudice (*id.* at 5–12).

On February 9, 2023, Plaintiff filed an Amended Complaint alleging substantially similar

---

the individual defendants in his Amended Complaint. (*Id.*)

claims against the City, Correctional Officers Baker and Gordon, Nurse Joycee, Lieutenant Q. Thomas, Lieutenant Cruz, an Unknown Warden, and an Unknown Former Commissioner. (Doc. No. 14.) Plaintiff alleges violations of his Fourteenth and Eighth Amendment rights, as well as claims for medical negligence, pain and suffering, and emotional distress. (*Id.* at 3.) Specifically, Plaintiff asserts medical negligence claims against Nurse Joycee for her failure to provide adequate medical care, "pain and suffering" claims against Correctional Officers Baker and Gordon, and Fourteenth Amendment deliberate indifference claims against the unnamed Warden and Lieutenants Q. Thomas and Cruz. (*Id.* at 12.)

## II. Facts

Taking the allegations in the Amended Complaint as true, the relevant facts are as follows.[5]

The events alleged in the Amended Complaint occurred between November 15, 2020 and July 15, 2021, when Plaintiff was a pretrial detainee housed first in PICC and then in CFCF. (Doc. No. 14 at 4.) While housed in PICC, Plaintiff alleges that he was moved to a cell where the "previous inmate had an open infection on his hand that was visible." (*Id.* at 5.) Plaintiff alleges that he asked Correctional Officer Gordon for cleaning supplies to disinfect his cell, but that his request denied. (*Id.* at 16.)

As a result, in December 2020, Plaintiff alleges that "the unsanitary conditions" caused him to "contract[] MRSA which hurt so bad it was hard to get out of bed." (*Id.* at 5, 14.) Plaintiff alleges that the condition presented in the form of "tennis [ball] size absests (sic) . . . on [his] groin and underarms," which are re-occurring and may require surgery to permanently

[5] "The District Court, in deciding a motion under Fed. R. Civ. P. 12(b)(6), [i]s required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]." *Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

remove. (*Id.* at 5.)

Plaintiff alleges that he informed the Warden that he had contracted MRSA; he alleges he was sent to the medical unit, only to be sent back with Motrin pain reliever medication. (*Id.* at 5, 16.) Plaintiff claims that he was taken to the medical facility two days later for surgery to have large abscesses removed (*id.*), but that his primary nurse, Nurse Joycee, was negligent in his care and that Correctional Officers Baker and Gordon ignored Plaintiff's requests for necessary follow-up care. (*Id.* at 5–18.)

Plaintiff alleges that Nurse Joycee failed to provide care for multiple days at a time and failed to supply antibiotic ointment and bandages, which were otherwise unavailable from the commissary. (*Id.* at 12, 14.) He claims that by neglecting to "call [Plaintiff] down to medical numerous times," she failed to follow the wound care checklist protocol, which called for daily medical attention. (*Id.* at 14, 18.)

Plaintiff also alleges that Correctional Officers Baker and Gordon, as well as Lieutenants Q. Thomas and Cruz and the unnamed Warden ignored Plaintiff's requests for follow-up medical care to treat his surgery wound. (*Id.* at 14–17.) Plaintiff alleges that he required daily bandage dressing changes to keep the wound clean, but that Correctional Officers Baker and Gordon denied medical attention numerous times and failed to open Plaintiff's cell door on restricted movement for wound care. (*Id.* at 17–18.) Plaintiff alleges that Correctional Officer Gordon "told me to 'sit my sick behind down' and 'my momma should have swallowed' when I stressed the need of medical attention." (*Id.* at 13 (internal quotation marks added).) He argues that this constitutes belligerent behavior which contributed to his pain and suffering.[6] (*Id.*) Plaintiff

[6] Plaintiff argues that Correctional Officers Baker and Gordon are liable for pain and suffering because they failed to perform their duties as described in the Correctional Officer Manual. (*Id.* at 13.) Plaintiff also alleges that Correctional Officer Baker is liable for pain and suffering because she skipped Plaintiff on the "virtual visit list" due to her grudge against him. (*Id.* at 14.)

further alleges that he notified Lieutenants Q. Thomas and Cruz of his concerns for his wound care, but that they failed to pay any attention. (*Id.* at 13–17.) Furthermore, Plaintiff argues that Lieutenants Q. Thomas and Cruz, as well as an unnamed Warden were notified on various occasions of Plaintiff's concerns, but "failed to change the protocols to assure adequate medical attention." (*Id.* at 13.) Plaintiff notes that throughout his time at PICC he filed numerous grievances against the correctional officers for failure to provide medical care. (*Id.* at 5, 7.)

Finally, Plaintiff was moved from PICC to CFCF in April 2021, where he alleges that he was denied medical treatment upon arrival for eight days. (*Id.* at 14.) However, Plaintiff does not make any specific allegations against any CFCF institutional officers regarding deficiencies in his medical care.[7] As a result of the conditions of his confinement and delay in medical care, Plaintiff seeks $12.5 million in damages. (*Id.* at 5.)

## III. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (quotation marks omitted). In reviewing a motion to dismiss, the court must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn from those allegations. *Id.* However, the court is not "compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (quotation marks omitted). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[7] Plaintiff also makes multiple unrelated allegations, including that he was denied access to recreation, that flashing lights caused irritation during sleep, and that his cellmate was denied medical attention. (*See* Doc. No. 14.)

Because Plaintiff is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 703 F.3d 239, 244–45 (3d Cir. 2013)). "This means we remain flexible, especially 'when dealing with imprisoned *pro se* litigants[.]'" *Id.* (quoting *Mala*, 704 F.3d at 244). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "'*pro se* litigants still must allege sufficient facts in their complaints to support a claim.'" *Id.* (quoting *Mala*, 704 F.3d at 245).

**IV. Analysis**

Although Plaintiff does not expressly state a theory of liability as to the City, the Court liberally construes his complaint (*see Vogt*, 8 F.4th at 185), and understands Plaintiff's theory against the City as alleging a Fourteenth Amendment violation pursuant to 42 U.S.C. § 1983 for deliberate indifference to Plaintiff's medical needs.[8] [9] Section 1983 states:

[8] Because Plaintiff was a pretrial detainee at the time of the injury, the Fourteenth Amendment's Due Process Clause governs his claims rather than the Eighth Amendment. *See A.M. ex rel J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.,* 372 F.3d 572, 584 (3d Cir. 2004).

[9] To the extent Plaintiff argues that the City is liable for medical negligence and "pain and suffering" tort claims, these claims are barred by the Pennsylvania Tort Claims Act. *See Johnson v. City of Philadelphia*, 975 F.3d 394, 404 (3d Cir. 2020) ("In Pennsylvania, municipalities are generally immune from tort liability.") (internal citations omitted) (cleaned up); 42 Pa. C.S. § 8541 ("Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee or any other person."). "Under the Tort Claims Act, the City of Philadelphia and its agencies are excepted from this general immunity if both of the following conditions are met: '(1) damages would be recoverable at common law or under a statute creating a cause of action if the injury were caused by a person not protected by immunity, and (2) the claim falls within one of the statutory exceptions to governmental immunity in Section 8542(b) of the [Tort Claims] Act.'" *Gremo v. Karlin*, 363 F. Supp. 2d 771, 793 (E.D. Pa. 2005) (citing *Granchi v. Borough of North Braddock*, 810 A.2d 747, 749 (Pa. Commw. Ct. 2002)). "Local agencies may be liable for acts related to the following categories listed in section 8542(b): (1) vehicle liability, (2) care, custody or control of personal property, (3) real property, (4) trees, traffic controls and street lighting, (5) utility service facilities, (6) streets, (7) sidewalks, [] (8) care custody or control of animals" and (9) sexual abuse. *Id*. (citing 42 Pa. C.S. § 8542(b)). Since none of these categories are applicable here, the City is immune from liability under the Tort Claims Act and any such claims premised on medical negligence or pain and suffering against the City are dismissed with prejudice.

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983. "[T]o state a claim under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law." *Jenkins v. Cordova*, Civ. No. 22-6482 (KM) (CLW), 2023 U.S. Dist. LEXIS 84428, *9 (D.N.J. May 15, 2023) (citing *Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011)). "Municipalities and other local government units . . . are included among those persons to whom § 1983 applies." *Powell v. Cmty. Educ. Ctrs.*, No. CV 17-3729, 2018 WL 1210524, at *3 (E.D. Pa. Mar. 8, 2018) (citing *Palakovic v. Wetzel*, 854 F.3d 209, 232 (3d Cir. 2017); *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978)). However, "a municipality is not liable for the unconstitutional acts of its employees just because of their employment, under a *respondeat superior* theory." *Johnson v. City of Philadelphia*, 975 F.3d 394, 403 (3d Cir. 2020) (citing *Monell*, 436 U.S. at 691). Thus, to state a claim against the City for municipal liability, "a plaintiff must establish that: (1) the municipality had a policy or custom that deprived the plaintiff of his constitutional rights; (2) the municipality acted deliberately and was the moving force behind the deprivation; and (3) the plaintiff's injuries were caused by the identified policy or custom." *Simpson v. Ferry*, 202 F. Supp. 3d 444, 452 (E.D. Pa. 2016) (citing *Monell*, 436 U.S. at 692–94). *See also Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984) ("A plaintiff must identify the challenged policy, attribute it to the city itself, and show a causal link between execution of the policy and the injury suffered.").

Under § 1983, a municipal policy is created when a "decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation,

policy, or edict." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990). A custom, on the other hand, does not require a formal proclamation. *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990). Instead, a custom exists where there is a "course of conduct, [that] although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id*. "In other words, custom may be established by proving knowledge of, and acquiescence to, a practice." *Fletcher v. O'Donnell*, 867 F.2d 791, 793–94 (3d Cir. 1989).

Here, Plaintiff fails to state a plausible *Monell* claim against the City because he has not alleged a municipal policy or custom, or that such a policy or custom caused a constitutional violation. Although Plaintiff briefly mentions that Lieutenants Q. Thomas and Cruz and the unnamed Warden "failed to change the protocols to assure adequate medical attention" following his complaints (Doc. No. 14 at 13), this allegation alone does not sufficiently identify what policy or custom Plaintiff believes violated his constitutional right. Moreover, although Plaintiff suggests that individual defendants such as Nurse Joycee, the lieutenants, and correctional officers failed to abide by the wound care checklist, his allegations are insufficient to state a *Monell* claim because he has not "pled facts sufficient to raise an inference that a municipal policymaker . . . was aware of or acquiesced in a practice" of failing to adhere the medical checklist. *Koukos v. Chester County*, Civil Action No. 16-4602, 2017 WL 511634, at *30 (E.D. Pa. Feb. 7, 2017) (citing *Bielevicz*, 915 F.2d at 850 ("[A] plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom."). Accordingly, Plaintiff's Fourteenth Amendment claim against the City is not plausible and must be dismissed. However, because the Court cannot say at this time that Plaintiff can never state a plausible *Monell* claim against the City, the dismissal

is without prejudice and Plaintiff is permitted the opportunity to file a second amended complaint to cure this defect.[10]

## V.     Conclusion

For the reasons discussed above, the City's motion to dismiss is granted without prejudice. Any amended complaint must clearly indicate a policy or custom which can be attributed to the City and which was the moving force behind a constitutional injury to Plaintiff.

Given the difficulties Plaintiff has had with making proper service and the complexities associated with his *Monell* claim, Plaintiff may file a request for appointment of an attorney, which the Court will then consider and determine if his case should be placed on the civil rights panel.[11] An appropriate order follows, which provides further instruction as to amendment.

---

[10] The Court declines to dismiss Plaintiff's § 1983 claim with prejudice as requested by the City. (Doc. No. 26.) *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007 (recognizing *sua sponte* allowance of amendment is required in the civil rights context). Although Plaintiff previously amended his complaint in response to the Court's dismissal (Doc. No. 7), this is the first time that the Court has given guidance on the deficiencies in relation to Plaintiff's claims against the City. Plaintiff is warned, however, that if he files a second amended complaint that fails to correct the issues identified by the Court in this Memorandum, it could result in dismissal of his § 1983 claim with prejudice. *See, e.g.*, *Ezeibe v. City of York*, No. 1:19-cv-00189, 2020 WL 1922632, at *3 n.3 (M.D. Pa. Apr. 21, 2020) ("In the present case, Plaintiff was put on notice of the deficiencies present in his complaint by the Court's prior dismissal, was previously granted leave to amend, and nonetheless failed to plead any additional facts to support a *Monell* claim based on false arrest. Accordingly, the Court finds no reason to allow further amendment of this claim and will dismiss it with prejudice." (citation omitted)).

[11] The Court will analyze a request for appointment of an attorney pursuant to the relevant factors and determine if Plaintiff's case should be placed on the Civil Rights Panel. If placed on the Panel, Plaintiff should understand that ***does not*** guarantee that Plaintiff will receive representation. Cases are listed on the Panel for approximately 90 days to see if a volunteer attorney agrees to take the case. During that period, the Court's Orders providing deadlines for Plaintiff to perfect service of process for his Amended Complaint or to file a second amended complaint would be stayed. To the extent that Plaintiff is unable to find representation through the panel and must represent himself, the Court reminds him that he is obligated to follow the Federal Rules, the United States District Court for the Eastern District of Pennsylvania's Local Rules of Civil Procedure, and Judge Marston's Policies and Procedures.